1
2
3
4
5
6
7
8                     IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    BMMSOFT, INC.,                          No. C-09-4562 MMC

12            Plaintiff,                       **ORDER DENYING DEFENDANT'S**
                                               **MOTION TO DISMISS**
13      v.

14    WHITE OAKS TECHNOLOGY INC.

15            Defendant
      _____/

16

17          Before the Court is defendant White Oaks Technology Inc.'s ("WOTI") motion, filed

18    October 30, 2009, as amended November 3, 2009, to dismiss plaintiff BMMsoft, Inc.'s

19    ("BMMsoft") complaint on the ground that WOTI is not subject to personal jurisdiction in

20    California.  BMMsoft has filed opposition, to which WOTI has replied.  Further, with leave of

21    court, BMMsoft has filed a surreply.  Having read and considered the papers filed in

22    support of and in opposition to the motion, the Court rules as follows.[1]

23                                      **BACKGROUND**

24    **A.  Allegations In Complaint**

25          In its complaint, BMMsoft, a corporation with its principal place of business in San

26    Francisco, California, alleges that its "principal product" is software known as "EDMT

27    Server" ("Software") which stores both "structured" and "unstructured" data in a single

28    _____
            [1]By order filed January 13, 2010, the Court took the matter under submission.

_United States District Court_
_For the Northern District of California_

database (see Compl. ¶ 8), and which product BMMsoft markets through distributors such as Sybase, Inc. ("Sybase"), which has its principal place of business in California (see Compl. ¶¶ 12, 22).  BMMsoft alleges that in February 2008, Sybase sold Software to WOTI pursuant to a "reseller license agreement" between Sybase and WOTI, which agreement is governed by California law.  (See Compl. ¶¶ 12, 23.)  BMMsoft also alleges that as part of the above-referenced transaction between Sybase and WOTI, WOTI entered into an agreement with BMMsoft titled "End User License Agreement," which agreement is subject to California law.  (See Compl. ¶¶ 13, 21.)  Further, according to BMMsoft, in 2008, it sold to WOTI, "through Sybase," a "total of eight (8) production CPU core licenses and eight (8) development CPU core licenses of the Software," each of which licenses was "intended for a WOTI end-customer who was to use the Software for its internal purposes."  (See Compl. ¶ 14.)  Also in 2008, "WOTI ordered 48 core licenses of Sybase IQ from Sybase which were intended for the End-User Project" (see Compl. ¶ 18).[2]

BMMsoft also alleges that, "[c]ommencing in March 2008, WOTI engineers regularly called and e-mailed BMMsoft in San Francisco to obtain support with the installation of the Software" (see Compl. ¶ 14), that, in July 2008, BMMsoft "delivered an update to the Software called version 6.2" (see Compl. ¶ 15), and, thereafter, WOTI "continued to seek telephone [and] e-mail support from BMMsoft for version 6.2" (see Compl. ¶ 16).  According to BMMsoft, during the above-referenced "support communications, BMMsoft disclosed [c]onfidential [i]nformation to WOTI concerning system performance and optimization." (See id.)

BMMsoft further alleges that, on November 23, 2008, after WOTI had engaged in "months of extensive work with BMMsoft," WOTI "declared that the '32-core EDMT system has gone production'," even though WOTI had only obtained eight "production core licenses." (See Compl. ¶ 17.)  Further, BMMsoft alleges, when BMMsoft then "sought the additional licenses, WOTI stopped communicating with BMMsoft."  (See id.)  Later, in

---

[2]According to the complaint, "Sybase IQ" is a "database" product that can form the "back-end" for the Software.  (See Compl. ¶ 9.)

1   January 2009, according to BMMSoft, "WOTI told BMMsoft that the End User Project had

2   been cancelled" (see Compl. ¶ 18); BMMsoft alleges, however, that WOTI, contrary to

3   WOTI's representations, "unlawfully copied the Software, and sold such illegal copies to the

4   End-User Project" (see Compl. ¶ 19), i.e., to WOTI's "end-customer" (see Compl. ¶ 14),

5   and, in so doing, disclosed to the customer BMMsoft's "trade secrets" (see Compl. ¶¶ 40,

6   44).

7          Based on the above allegations, BMMsoft alleges WOTI violated the Copyright Act

8   by copying and selling the Software without permission, breached the provisions of the End

9   User License Agreement, and misappropriated BMMsoft's trade secrets.

10  **B. Evidence Offered by WOTI**

11         In support of the instant motion, WOTI offers evidence that it has no offices in or

12  employees based in California (see Broder Decl. ¶ 5), it has never made or attempted to

13  make sales in California (see id.), and it owns no property in and has no mailing address or

14  telephone listing in California (see id.)  WOTI also offers evidence that when it purchased

15  BMMsoft's products, it did so from a vendor with an address outside of California.  (See id.

16  Exs. ¶¶ A, B.)  Additionally, WOTI offers evidence the "physical locations in which WOTI

17  employees performed work in connection with BMMsoft's EDMT Server software were in

18  Maryland, Virginia and/or Florida."  (See id. ¶ 10.)  With respect to contacts between the

19  parties during the time BMMsoft provided support services to WOTI, WOTI offers evidence

20  that "[n]early all contacts between WOTI and BMMsoft took place by email and the

21  remainder were by telephone" (see id. ¶ 12); during such contacts, WOTI employees were

22  never, according to WOTI, "physically present in California" (see id.).  Further, WOTI offers

23  evidence that it is "primarily a services company," that its customers are federal agencies

24  and "prime contractors" of federal agencies, and that WOTI's President does not

25  "consider[ ]" BMMsoft to be a "competitor of WOTI."  (See Supp. Broder Decl. ¶ 9.)

26  //

27  //

28  //

3

**DISCUSSION**

Where a court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction,[3] the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." See Brayton Purcell LLP v. Recordon & Recordon, 575 F.3d 981, 985 (9th Cir. 2009) (internal citation and quotation omitted). "Additionally, uncontroverted allegations in [the] plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the] plaintiff's favor." Id. (internal citation, quotation and alterations omitted).

Here, by the instant motion, WOTI, a citizen of Maryland (see Broder Decl. ¶ 3), argues it is not subject to personal jurisdiction in the Northern District of California. In opposition, BMMsoft argues that the Court may exercise specific jurisdiction over WOTI.[4]

Where a plaintiff contends a district court may assert specific jurisdiction over a non-resident defendant, the court "employs a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction." See Brayton Purcell, 575 F.3d at 985. Specifically, a court, to exercise specific jurisdiction, must find "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." See Bancroft & Masters, Inc. v. Augusta National Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). "The plaintiff bears the burden of satisfying the first two prongs of the test." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff meets such burden, "the burden then shifts to the defendant to present a compelling case that the exercise of

---

[3]Neither party has requested the Court conduct an evidentiary hearing.

[4]Under some circumstances, a district court may exercise "general jurisdiction" over a non-resident. See Bancroft & Masters, Inc. v. Augusta National Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). In the instant case, BMMsoft does not rely on general jurisdiction, and, consequently, the Court does not consider WOTI's argument that it is not subject to general jurisdiction in California.

1    jurisdiction would not be reasonable." <u>See</u> <u>id.</u>

2    **A. Purposeful Availment/Purposeful Direction**

3         "The first prong is satisfied by either purposeful availment or purposeful direction."

4    <u>See</u> <u>Brayton Purcell</u>, 575 F.3d at 985.  Here, BMMsoft relies on its allegations that WOTI

5    has engaged in infringing conduct and has misappropriated trade secrets.  Where a plaintiff

6    seeks to establish the "first prong" by relying on tortious conduct, "[p]urposeful direction is [

7    ] the proper analytical framework." <u>See</u> <u>id.</u> at 985-86 (finding, for purposes of personal

8    jurisdiction, copyright infringement is properly "characterized as a tort").

9         To establish "purposeful direction," the plaintiff must show that the defendant

10   "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

11   that the defendant knows is likely to be suffered in the forum state." <u>See</u> <u>id.</u> at 986 (internal

12   quotation and citation omitted).  "There is no requirement that the defendant have any

13   physical contacts with the forum." <u>Id.</u>

14        **1. Intentional Act**

15        As BMMsoft correctly observes, WOTI has not, at this stage of the proceedings,

16   offered evidence to dispute BMMsoft's allegation that WOTI copied and sold the Software

17   without authorization.[5]  Nor does WOTI offer evidence to dispute BMMsoft's allegation that

18   WOTI obtained trade secrets from BMMsoft during the time WOTI sought support services

19   from BMMsoft, and thereafter disclosed those secrets to another.  Consequently, those

20   allegations are "taken as true" for purposes of the instant motion. <u>See</u> <u>Brayton Purcell</u>, 575

21   F.3d at 985.

22        Accordingly, the "intentional act" element is met. <u>See</u> <u>Menken v. Emm</u>, 503 F.3d

23   1050, 1059 (9th Cir. 2007) (holding "intentional act" element met where plaintiff alleged

24   defendant intentionally engaged in tortious conduct); <u>see</u>, <u>e.g.</u>, <u>Brayton Purcell</u>, 575 F.3d at

25

26        [5]The parties dispute whether, during the period in which BMMsoft provided support
     services to WOTI, BMMsoft delivered an upgraded version of the Software.  (<u>See</u> Krneta
27   Decl. ¶ 10; Broder Decl. ¶ 11.)  Disputes of fact are, at this stage of the proceedings,
     resolved in favor of BMMsoft.  <u>See</u> <u>Brayton Purcell</u>, 575 F.3d at 985.  In any event, even if
28   WOTI did not receive the upgraded version of the Software, WOTI fails to argue how such
     circumstance bears on the instant motion.

986 (holding defendant's posting on its website material that infringed plaintiff's copyright constituted "intentional act" for purposes of personal jurisdiction).

## 2. Expressly Aimed

The second element requires that "the defendant's conduct be expressly aimed at the forum." See id. at 986. This requirement "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." See Bancroft & Masters, 223 F.3d at 1087. Where the wrongful conduct is infringement, if the plaintiff shows the defendant "'willfully infringed copyrights owned by [the plaintiff]'" and that the defendant knew the plaintiff's principal place of business was located in the forum, such showing "'alone is sufficient'" to satisfy the "expressly aimed" element. See Brayton Purcell, 575 F.3d at 987 (quoting Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc., 106 F.3d 284, 289 (9th Cir. 1997)).

Here, BMMsoft alleges, and WOTI at this juncture has not offered evidence to dispute, that WOTI willfully infringed BMMsoft's copyrights when it copied the Software and sold it to a third party. Further, WOTI does not dispute that BMMsoft's principal place of business is in California, or, more importantly, that it knew such fact, not only because it was advised to take the three-hour time difference into consideration when calling (see Krneta Decl. ¶ 8), but also because the "End User License Agreement" between BMMsoft and WOTI lists a California address, and no other, for BMMsoft (see Compl. Ex. B ¶ 17).

The above showing by BBMsoft is sufficient, under the principles set forth in Brayton Purcell and the cases cited therein, to support a finding that BMMsoft's conduct was expressly aimed at California. Although WOTI argues the holding in Brayton Purcell is, for two reasons, inapplicable in the instant case, the Court finds neither of such asserted reasons persuasive.

First, WOTI argues that BMMsoft does not allege that WOTI competed with WOTI at all, let alone in California, and that the latter is a requisite element of purposeful direction in a case of infringement. Such additional showing was not required in Columbia Pictures, on

1    which <u>Brayton Purcell</u> relied.  Assuming, <u>arguendo</u>, competition nonetheless is a

2    prerequisite, WOTI's assertion that its primary business is not selling software and that

3    WOTI does not consider itself to be a competitor of BMMsoft is unavailing, as, on the

4    evidence presented, WOTI in fact was competing with BMMsoft, at least for the

5    customer(s) who allegedly purchased unauthorized copies of the Software from WOTI.

6    Further, the location of any such customer is "irrelevant" where, as here, there is no dispute

7    that the defendant was aware of the plaintiff's residence in the forum state.  <u>See</u> <u>Brayton</u>

8    <u>Purcell</u>, 575 F.3d at 987 (holding, where plaintiff alleged defendant unlawfully copied and

9    used plaintiff's copyrighted material to compete for customers, fact that customers did not

10   reside in forum was "irrelevant so long as [the defendant] individually targeted [the plaintiff],

11   a [f]orum resident").

12       WOTI next argues that <u>Brayton Purcell</u> is "not the law of the Ninth Circuit."  (<u>See</u>

13   Def.'s Reply at 4:15-16.)  <u>Brayton Purcell</u> and the cases cited and relied upon therein,

14   however, are decisions of the Ninth Circuit and, as such, are binding on this Court.  To the

15   extent WOTI may be arguing that <u>Brayton Purcell</u> and the cases cited therein should not be

16   the law of the Ninth Circuit, the argument is not properly addressed to a district court.[6]

17       Accordingly, the "expressly aimed" element is met.

18    **3.  Foreseeable Harm**

19       "The final element requires that [the defendant's] conduct caused harm that it knew

20   was likely to be suffered in the forum."  <u>Brayton Purcell</u>, 575 F.3d at 988.  It is "foreseeable

21   that [a plaintiff will] be harmed by infringement of its copyright, including harm to its

22   business reputation and goodwill, and decreased business and profits," and that "some of

23

                   _____

24       [6]WOTI asserts <u>Brayton Purcell</u> is contrary to the holding set forth in
<u>Schwarzenegger</u>, in which the Ninth Circuit found an automobile dealership that used a

25   likeness of Arnold Schwarzenegger in an advertisement did not expressly aim its conduct
at California because the advertisement was seen only by persons in Ohio.  <u>See</u>

26   <u>Schwarzenegger</u>, 374 F.3d at 807.  <u>Schwarzenegger</u>, however, is distinguishable on its
facts from both the instant case and <u>Brayton Purcell</u>, in that the advertisement in

27   <u>Schwarzenegger</u>, as <u>Brayton Purcell</u> noted, "was expressly aimed at Ohio" and the
defendant "had no reason to believe that any Californians would see it."  <u>See</u> <u>Brayton</u>

28   <u>Purcell</u>, 575 F.3d at 988 (internal quotation and citation omitted); <u>see also</u>
<u>Schwarzenegger</u>, 374 F.3d at 807 (noting defendant's "express aim was local").

1    this harm [will] occur" in the forum where the plaintiff resides.  See id.

2           Here, and, again assuming as true the allegation that WOTI made unauthorized

3    copies of the Software, which it then sold, harm in the form of decreased profits was

4    foreseeable in California, where WOTI knew BMMsoft resided.

5           According, the "foreseeable harm" element is met.

6           **4.  Conclusion As To Purposeful Availment/Purposeful Direction**

7           Based on the record presently before the Court, the Court finds BMMsoft has shown

8    WOTI engaged in intentional acts that were expressly aimed at California, and that it was

9    foreseeable those acts would cause harm in California.

10          Accordingly, BMMsoft has established the first requirement.

11   **B.  Claim Arises Out of Forum-Related Activities**

12          "The second requirement for specific jurisdiction is that the contacts constituting

13   purposeful availment must be the ones that give rise to the current suit."  Bancroft &

14   Masters, 223 F.3d at 1088.

15          Here, as discussed above, the contacts constituting purposeful direction are WOTI's

16   alleged willful infringement and misappropriation of trade secrets, and, more specifically,

17   WOTI's having made unauthorized copies of BMMsoft's Software, and thereafter having

18   sold those copies and disclosed to the purchaser(s) BMMsoft's alleged trade secrets.

19   BMMsoft's claims arise out of those alleged contacts.

20          Accordingly, the second requirement is met.

21   **C.  Reasonableness**

22          "The final requirement for specific jurisdiction . . . is reasonableness."  See id.  "For

23   jurisdiction to be reasonable, it must comport with fair play and substantial justice."  Id.  The

24   defendant has "the burden of demonstrating unreasonableness" and, to meet such burden,

25   the defendant must "put on a compelling case."  See id.

26          "The reasonableness determination requires the consideration of several specific

27   factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the

28   burden on the defendant in defending in the forum, (3) the extent of the conflict with the

1    sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the

2    dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the

3    forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an

4    alternative forum."  Id.

5              **1.  Extent Of Defendant's Purposeful Interjection Into California**

6              As discussed above, WOTI allegedly engaged in conduct purposefully directed at

7    California when it made and sold unauthorized copies of BMMsoft's Software and when it

8    obtained from BMMsoft confidential matter WOTI later disclosed without permission to the

9    person or persons to whom it sold the unauthorized copies.  For purposes of the element of

10   reasonableness, willful infringement of intellectual property owned by a citizen of California,

11   where the defendant knows the owner is a California resident, weighs in favor of exercising

12   jurisdiction, as does the defendant's engaging in any intentional act that the defendant

13   knows is likely to "injure" the plaintiff in California.  See Dole Food Co. v. Watts, 303 F.3d

14   1104, 1115 (9th Cir. 2002).  The record, however, does not reflect interjection that was

15   either lengthy or widespread in nature.

16             Accordingly, this factor weighs moderately in favor of the Court's exercising

17   jurisdiction.

18             **2.  Burden On Defendant In Defending In California**

19             In its motion, WOTI asserts it would be subjected to an "extreme" burden should the

20   Court exercise jurisdiction over it.  (See Def.'s Mot. at 9:8-9.)  WOTI fails to cite, however,

21   any evidence to support such conclusory statement.  Although some amount of burden

22   may be inferred from the location of WOTI's principal place of business, WOTI has

23   obtained counsel in California, which although by itself would not wholly eliminate any such

24   implicit burden, nonetheless suggests the instant factor does not weigh heavily against the

25   exercise of jurisdiction.  See, e.g., Mattel, Inc. v. Greiner and Haussser GmbH, 354 F.3d

26   857, 867 (9th Cir. 2003) (holding, where German defendant retained "highly capable and

27   sophisticated" counsel located in forum, such factor supported finding that any "burden"

28   imposed in requiring defendant to defend claims in California was "not great").

1    Accordingly, this factor weighs, at best, slightly against the Court's exercise of
2    jurisdiction.

3    **3.  Extent Of Conflict With Sovereignty Of Defendant's Forum**

4    This factor "entails an examination of the competing sovereign interests in regulating
5    [the defendant's] behavior."  See Dole Food, 303 F.3d at 1115.  Here, WOTI has not
6    argued, let alone shown, that Maryland has any interest in regulating the alleged behavior,
7    or, that if it does have an interest by reason of WOTI's incorporation therein (see Broder
8    Decl. ¶ 3), there exists any conflict between California and Maryland law.

9    Accordingly, this factor weighs in favor of the Court's exercising jurisdiction.

10   **4.  Forum State's Interest In Adjudicating Dispute**

11   "California maintains a strong interest in providing an effective means of redress for
12   its residents who are tortiously injured."  Harris Rutsky & Co. Ins. Services, Inc. v. Bell &
13   Clements Ltd., 328 F.3d 1122, 1133 (9th Cir. 2003) (internal quotation, citation, and
14   alteration omitted).  Moreover, the parties, by contract, have agreed that the license at
15   issue herein is to be governed by California law.  (See Compl. Ex. B ¶ 17.)

16   Accordingly, this factor weighs in favor of the Court's exercising jurisdiction.

17   **5.  Most Efficient Judicial Resolution Of Controversy**

18   The factor of efficient judicial resolution "focuse[s] on the location of the evidence
19   and witnesses."  See Harris Rutsky, 328 F.3d at 1133 (9th Cir. 2003).

20   According to WOTI, some of the witnesses it anticipates it will offer reside outside
21   California, specifically, Sybase employees located in Washington, D.C. and/or
22   Massachusetts (see Supp. Broder Decl. ¶¶ 4, 7), and "one or more employees" of a
23   "customer" of WOTI located in Maryland (see id. ¶ 8).  Although BMMsoft disputes the
24   relevance of the above-referenced out-of-state witnesses, at a minimum, given that the
25   alleged infringement and misappropriation occurred outside of California, it would appear
26   apparent that at least some witnesses outside of California are likely to be necessary.
27   Nonetheless, even where "almost all" of the expected witnesses reside outside the forum,
28   such a showing does not "weigh[ ] heavily" against the exercise of jurisdiction "given the

1   modern advances in communication and transportation."  See Harris Rutsky, 328 F.3d at

2   1133 (internal citation and quotation omitted) (holding where "almost all of the evidence and

3   witnesses reside[d] in London [England]," factor did not weigh heavily against exercise of

4   jurisdiction by district court in California).

5        As the Supreme Court has observed, "considerations" other than a claimed

6   "substantial inconvenience" of venue are necessary to warrant a finding that the exercise of

7   jurisdiction would be unconstitutional, because inconvenience can be addressed by a

8   motion to change venue.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)

9   (noting "considerations" arising from claim of "substantial inconvenience" due to selected

10  venue "usually may be accommodated through means short of finding jurisdiction

11  unconstitutional"); Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3rd Cir. 1990) (holding

12  "proper means to resolve the competing forum preferences of the parties may be through a

13  motion for change of venue," as opposed to constitutional challenge to exercise of

14  jurisdiction; stating "[j]urisdictional issues are not to be confused with § 1404(a) motions").

15       Accordingly, this factor weighs against the Court's exercising jurisdiction, but not

16  heavily.

17           **6. Importance of Forum to Plaintiff's Interest In Convenient/Effective Relief**

18       BMMsoft offers evidence, undisputed by WOTI, that BMMsoft is an "early stage

19  company, with limited resources and fewer than 10 employees."  (See Krneta Decl. ¶ 13.)

20  Based on such concerns, BMMsoft's President asserts BMMsoft "has limited ability to

21  prosecute the instant action in [ ] Maryland."  (See id.)  Although such showing is sufficient

22  to identify the importance of the instant forum to BMMsoft, this factor, as the Ninth Circuit

23  has observed, "is not of paramount importance."  See Harris Rutsky, 328 F.3d at 1133.

24       Accordingly, this factor weighs slightly in favor of the Court's exercising jurisdiction.

25       **7.  Existence Of Alternative Forum**

26       Although, as discussed above, BMMsoft has shown it has an economic interest in

27  having the matter heard in California, an alternative forum does exist, specifically, a state or

28  federal court in Maryland.

1    Accordingly, this factor weighs against the Court's exercising jurisdiction, albeit not

2    heavily.

3    **8. Conclusion As To Reasonableness**

4    WOTI has the "burden of presenting a compelling case that the exercise of

5    jurisdiction would not comport with fair play and substantial justice." See id. at 1134. Here,

6    four of the above seven factors weigh in favor of exercising jurisdiction, although none

7    heavily so, while three weigh against it, and, again, none heavily so. Where, as here, the

8    "balance is essentially a wash," the defendant has failed to show a "compelling case"

9    against the exercise of jurisdiction. See id.

10    Accordingly, the Court finds WOTI has failed to show the exercise of specific

11    jurisdiction would be unreasonable.

12    <center>**CONCLUSION**</center>

13    For the reasons stated above, WOTI's motion to dismiss is hereby DENIED.

14    **IT IS SO ORDERED.**

15

16    Dated:  January 21, 2010

17                                                      MAXINE M. CHESNEY
                                                        United States District Judge

18

19

20

21

22

23

24

25

26

27

28

<center>12</center>