IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMMSOFT, INC., | No. C-09-4562 MMC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT** |
| v. | |
| WHITE OAKS TECHNOLOGY, INC., | |
| Defendant. | |

Before the Court is defendant White Oaks Technology, Inc.'s ("WOTI") "Motion to Dismiss the Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted or, in the Alternative, for Judgment on the Pleadings or, in the Alternative, for Summary Judgment," filed June 11, 2010. Plaintiff BMMSoft Inc. ("BMM") has filed opposition, to which WOTI has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In its amended complaint ("AC"),[2] BMM alleges it is a software development company whose "principal product" is software known as "EDMT Server" ("the Software")

---

[1] By order filed August 13, 2010, the Court took the matter under submission.

[2] Although titled "Complaint," the operative pleading, filed May 28, 2010, is an amended complaint filed pursuant to the Court's May 7, 2010 order dismissing the state law claims in the initial complaint with leave to amend.

(see AC ¶ 8), which software contains "confidential information belonging to BMM[ ]" (see AC ¶ 29). BMM also alleges that distributors, including Sybase, Inc. ("Sybase"), sell the Software (see AC ¶ 11), that, in 2008, WOTI purchased the Software from Sybase, and that the Software was "intended for a WOTI end-customer who was to use the Software for its internal purposes" (see AC ¶ 13). BMM further alleges that, "[c]ommencing in March 2008, WOTI engineers regularly called and e-mailed BMM[ ] . . . to obtain support with the installation of the Software" (See AC ¶ 14.) According to BMM, "[t]he Software cannot be run, even for support purposes," unless someone "click[s]" the 'I agree' box that appears on the screen on which the terms of the "End User License Agreement" ("EULA") is displayed. (See AC ¶¶ 12-13 and Ex. A at 11).[3] At some point, not specified by BMM in the AC, WOTI "copied and distributed the Software" in a manner prohibited by the terms of the EULA (see AC ¶¶ 24-25), and "disclos[ed]" the confidential information in the Software to "third parties without authorization" (see AC ¶ 33).

Based on the above allegations, BMM alleges two causes of action, specifically, a claim for breach of license and a claim for misappropriation of trade secrets.

**DISCUSSION**

By the instant motion, WOTI argues it is entitled to dismissal of, or, alternatively, summary judgment on, the breach of license claim, and is entitled to dismissal of the misappropriation of trade secrets claim.

**A. Breach of License (First Cause of Action)**

In the First Cause of Action, BMM alleges that WOTI copied and distributed the Software in a manner prohibited by the terms of the EULA, and, consequently, that WOTI breached the EULA, a license agreement.

//
//
//

---

[3] A printed copy of the EULA is attached as Exhibit A to the AC. Beginning with the first page, the pages of the printed copy are numbered sequentially 11 through 16.

### 1. Failure to State a Claim[4]

WOTI argues BMM fails to allege that WOTI clicked the "I agree" box, and, consequently, BMM has failed to state a claim for breach of license.

Although the AC does not include an explicit allegation that WOTI "clicked" the "I agree" box, such allegation reasonably may be inferred from BMM's explicit allegations that WOTI purchased the Software for one of WOTI's customers and thereafter contacted BMM to "obtain support with the installation" (see AC ¶ 13), that the Software cannot run for any purpose unless someone "click[s]" the "I agree" box (see AC ¶ 13 and Ex. A at 11), and that, following its "support communications" with BMM, WOTI "declared" the Software had "gone production" (see AC ¶ 11).  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (holding claim not subject to dismissal where "plaintiff pleads factual content that allows the court to draw the inference that the defendant is liable for the misconduct alleged"); see, e.g., Don King Productions/Kingvision v. Lovato, 911 F. Supp. 419, 422 (N.D. Cal. 1995) (holding, where plaintiff alleged defendant violated statute that prohibited interception of "cable-borne signals," and alleged defendant intercepted program plaintiff had broadcast "via closed circuit TV," court could "reasonably infer [at pleading stage] that some of the transmissions were intercepted by cable").

Accordingly, WOTI has failed to show it is entitled to dismissal of the First Cause of Action.

### 2. Summary Judgment

WOTI argues that, assuming it "clicked" the "I agree" box while installing the Software for the United States, it nonetheless is entitled to summary judgment on the First Cause of Action, for the reason that it is undisputed it "clicked" on behalf of the United

---

[4]In its caption, WOTI references, in addition to Rule 56 of the Federal Rules of Civil Procedure, both Rule 12(b)(6) and Rule 12(c).  Because WOTI has not filed an answer to the AC, the instant motion, to the extent it challenges the adequacy of the pleading, is properly characterized as a motion to dismiss pursuant to Rule 12(b)(6), and not as a motion for judgment on the pleadings pursuant to Rule 12(c).  Cf. Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 954 (9th Cir. 2004) (holding "motion to dismiss" filed after answer is "treated as a motion for judgment on the pleadings").

1  States, whom WOTI had previously disclosed was the licensee.

2  As a general matter, under California law,[5] a person who enters into a contract as an agent for a disclosed principal is not considered a party to the contract. See, e.g., Tri-Delta Engineering, Inc. v. Insurance Co. of North America, 80 Cal. App. 3d 752, 755, 759 (holding agent acting for disclosed insurer when he negotiated terms of insurance policy could not be held liable for breach of policy); Walker v. Home Indemnity Co., 145 Cal. App. 2d 318, 325 (1956) (finding judgment against insurer not inconsistent with nonsuit as to individual defendant where it was undisputed individual signed policy as agent for insurer); cf. W.W. Leasing Unlimited v. Commercial Standard Title Ins., 149 Cal. App. 3d 792, 119-20 (1983) (holding where agent did not disclose identity of principal to plaintiff, agent liable for breach of contract by principal). The general rule can be overcome only by a showing that the agent and the third party intended the agent to be personally bound by the contract along with the principal. See, e.g., Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc., 205 Cal. App. 3d 442, 451-52 (1988) (holding, where defendant advertising agency entered into contract with plaintiff television station to purchase advertising time on behalf of disclosed principal, plaintiff "rebutted the presumption of nonliability" on part of agent, in light of defendant's "admissions" that "stations customarily look to the advertising agency for payment of air time" and that plaintiff had "followed this custom in each of the transactions involved"). The Restatement of Agency summarizes the applicable law as follows: "When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract[,] and (2) the agent is not a party to the contract unless the agent and third party agree otherwise." See Rest. 3d Agency, § 6.01; see Tri-Delta Engineering, 80 Cal. App. 3d at 759 (citing prior version of Restatement of Agency as setting forth California law as to when agent of disclosed principal can be considered party to contract between principal

---

[5] In its motion, WOTI relies on California contract law, and BMM, in its opposition, does not argue the law of another state should apply. Indeed, the EULA provides that it is "governed by the laws of the State of California." (See AC Ex. A § 17.)

and third party).

Here, WOTI offers the following evidence, none of which BMM disputes: (1) the United States Department of the Air Force ("United States") awarded a contract to WOTI, and, during the course of performing its contractual duties to the United States, WOTI purchased the Software on two occasions, the first from Software Plus and the second from Sybase (see Broder Decl., filed March 24, 2010, ¶¶ 3-5, 10, Exs. A, B);[6] (2) each "Purchase Order" agreement provided that WOTI would "immediately transfer all items purchased under [the Purchase Order] to the following Licensee: United States Department of Defense/OSD, Fort Washington Facility, . . . Ft Washington, MD 20744" (see id. Exs. A, B); (3) each Purchase Order agreement also provided that the "Licensee [United States Department of Defense/OSD] shall certify to Sybase that the number of copies of the [S]oftware that are in use do not exceed those purchased under [the Purchase Order]" (see id.); (4) the United States "reviewed and authorized" each Purchase Order (see id. ¶¶ 6, 11); and (5) the Software ordered under each Purchase Order "was delivered directly to a Department of Defense facility at Fort Washington, Maryland and used exclusively at U.S. Government facilities in connection with the [contract between WOTI and the United States]" (see id. ¶¶ 8, 13).

Additionally, WOTI relies on the fact that the EULA is titled "End User License Agreement," and on the following language in the EULA, which, WOTI argues, evidences BMM's intent that an agent such as WOTI is not a party thereto:

> BMM[ ] grants to You a non-exclusive, nontransferable, perpetual licensee to Use the Program at the location specified on the Order. The Program shall be subject to the applicable usage limitations based on the type of license purchased, as indicated in the Order. You may Use the Program (and accompanying Documentation) solely for Your internal business purposes by Your employees, agents and contractors and on the operating systems specified in the Order, unless otherwise permitted by the type of license purchased.

(See AC Ex. A § 2.)

---

[6] It appears that Software Plus is an agent of Sybase. (See id. Ex. A at 2) ("By accepting this order, Software Plus represents that it has the authority to accept the following terms on behalf of Sybase . . . .")

Case 3:09-cv-04562-MMC   Document 77   Filed 08/25/10   Page 6 of 9

The Court finds the above-referenced evidence offered by WOTI is sufficient to meet WOTI's initial burden to demonstrate that, assuming it clicked the "I accept" box while installing the Software at a United States' facility in Fort Washington, it did so as an agent for a disclosed principal. As set forth above, WOTI advised Software Plus and Sybase that WOTI would transfer the possession of the Software to the United States, which was identified as the "licensee." Further, the above-referenced evidence is sufficient to meet WOTI's initial burden to show there was no intent by WOTI and BMM that WOTI would be held liable under the EULA. There are two parties to the EULA, "BMMsoft" and "You," the latter being an unambiguous reference to the licensee, as reflected both in the title of the agreement, "End User License Agreement," and in the above-quoted language therefrom. Further, the EULA describes "You" as the person or entity that will use the Software at the "location specified on the Order" (see AC Ex. A § 2), which, in both of the subject Orders, is Fort Washington, a location owned and operated by the United States. (See Broder Decl. Exs. A, B).

The Court next considers whether BMM, in response, has come forward with evidence sufficient to establish a triable issue of fact as to whether WOTI is a party to the EULA. As discussed below, the Court finds BMM has failed to make such a showing.

First, relying on a declaration submitted by its counsel of record, Perry J. Narancic ("Narancic"), BMM argues that WOTI is itself a licensee. In particular, Narancic contends, (see Narancic Decl. ¶ 11), such a conclusion can be drawn from a Software Plus form titled "Quotation," in which Software Plus provided a price quotation to a "customer," whom the form identifies as "White Oak Technologies - USAF" (see Broder Decl. Ex. A at 4). Although WOTI agreed, in the Purchase Order, to be billed for the Software identified in the Quotation (see id. Ex. A at 1), the Purchase Order, as discussed above, disclosed that the purchase was on behalf of the "Licensee," the United States (see id.). Nothing in the EULA, which, as discussed, is a "license agreement," provides that a party who purchases Software on behalf of the licensee somehow also becomes a licensee.

//

6

Next, to the extent BMM may be relying on Narancic's declaration to identify an industry custom that may shed light on the meaning of the EULA, such reliance is unavailing. Neither the declaration nor BMM's opposition points to any language in the EULA that is ambiguous, or to any language therein that reasonably could be interpreted, in light of an industry custom or otherwise, as providing that non-licensees are parties to the "license agreement."

Accordingly, to the extent WOTI seeks summary judgment on the First Cause of Action, the motion will be granted.

**B. Misappropriation of Trade Secrets (Second Cause of Action)**

In the Second Cause of Action, BMM alleges the Software contains "confidential information belonging to BMM[ ]." (See AC ¶ 29.) According to BMM, WOTI engaged in "misappropriation" of such confidential information "[b]y selling the Software without a license, and disclosing it to third parties without authorization, and using the [c]onfidential [i]nformation to create a competing product." (See AC ¶ 33.)

Under California law, a "misappropriation" of a trade secret occurs when there has been

>  (1) [a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
>  (2) [d]isclosure or use of a trade secret of another without express or implied consent by a person who:
>
>  >  (A) [u]sed improper means to acquire knowledge of the trade secret; or
>  >
>  >  (B) [a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>  >
>  >  >  (i) [d]erived from or through a person who had utilized improper means to acquire it;
>  >  >
>  >  >  (ii) [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>  >  >
>  >  >  (iii) [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

//

      (C) [b]efore a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

See Cal. Civ. Code § 3426.1(b).

  In its motion, WOTI argues that the AC does not include any factual allegations to support a claim that it obtained the alleged confidential information by improper means or disclosed it improperly. Although the Court agrees that the AC does not allege an "improper means" theory, see Cal. Civ. Code § 3426.1(b)(1), the Court finds the AC sufficiently alleges an improper disclosure.

  The EULA provides that the "[c]onfidential [i]nformation" in the Software "shall not be disclosed to any third party without the express written consent of BMM[ ]," with the exception that the "[c]onfidential [i]nformation" may be disclosed to "consultants performing services for [the licensee], provided that such consultants are bound by a written non-disclosure agreement with [the licensee] protecting such [c]onfidential [i]nformation in a manner consistent with [the EULA]." (See AC Ex. A § 9.) As discussed above, BMM alleges that WOTI purchased the software and thereafter installed it for the United States. As further discussed above, BMM alleges that during the installation process, WOTI necessarily would have had to "click" the "I agree" box that appeared on the screen when the EULA was displayed, and thus would have had notice that the United States owed a duty to BMM to maintain the secrecy of the confidential information. See Cal. Civ. Code § 3426.1(b)(2)(B)(iii).

  Accordingly, WOTI has failed to show it is entitled to dismissal of the Second Cause of Action.

//
//
//
//
//
//

**CONCLUSION**

For the reasons stated above, WOTI's motion is hereby GRANTED in part and DENIED in part, as follows.

1. To the extent WOTI seeks summary judgment on the First Cause of Action, the motion is GRANTED.

2. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated:  August 25, 2010

MAXINE M. CHESNEY
United States District Judge